UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHLEEN J. SMITH, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-07-2229 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| *Defendant.* | § | |

**MEMORANDUM AND ORDER**

Plaintiff Kathleen J. Smith seeks review of the denial of her request for disability insurance benefits under Title II of the Social Security Act.[1] The parties have filed motions for summary judgment (Dkts. 15, 21). Having considered the parties' submissions, the record, and the law, the court denies Smith's motion and grants the Commissioner's motion.

**Background**

Kathleen Smith filed an application under Title II of the Social Security Act for disability insurance benefits on July 2, 2003. She alleged disability beginning June 14, 1999 due to residual symptoms from breast cancer and its treatment; pain in her neck, shoulder, arms, back, legs, hip, and feet; degenerative arthritis; and problems with her hands. Smith has a high school education and one year of college, and past relevant work as a truck driver and telemarketer. At the time of her hearing on November 8, 2006 she was 60 years old. Smith was covered for benefits through December 31, 2004.

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment (Dkt. 14).

At the hearing, testimony was given by a medical expert, Grethe Wik, a vocational expert, Wallace A. Stanfill, Smith, and Smith's husband. The ALJ issued a decision December 13, 2006 denying Smith's application for benefits. Upon appeal, the Appeals Council found there was no basis for review, making the ALJ's decision the Commissioner's final decision.[2] This appeal followed.

**Analysis**

    **A.    Standard of Review**

Section 405(g) of the Social Security Act sets forth the standard of review in this case. The federal courts review the decision of the Commissioner to deny Social Security benefits to determine whether (1) the Commissioner applied the proper legal standard and (2) the Commissioner's decision is supported by substantial evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence is "more than a scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. "Conflicts in the evidence are for the

---

[2] The ALJ previously held a hearing in November 2004 and issued an opinion denying benefits on November 24, 2004. The appeals council initially denied review. Upon request for reconsideration, on June 16, 2006 the appeals council remanded the case to the ALJ with instructions to conduct a de novo hearing at which he was to evaluate Smith's obesity, give further consideration to Smith's RFC, and obtain additional evidence from a vocational expert, if warranted. Smith alleged ALJ bias in her request for review, but the Appeals Council did not remand the case for a new hearing on that basis.

[Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

In order to qualify for disability benefits, a plaintiff must prove he has a disability, which is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423 (d)(1)(A) and 1382c(a)(3)(A); *Masterson*, 309 F.3d at 271.  The administrative law judge must follow a five-step sequential analysis to determine whether a plaintiff is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, *i.e.*, working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1? If so, the claimant is disabled. If not, then the inquiry proceeds to question 4.

4. Can claimant still perform his past relevant work? If so, the claimant is not disabled. If not, then the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work claimant can do? If so, claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. At step five, the burden shifts to the Commissioner to show that employment for the claimant exists in the national economy. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

### 2.   Challenges to the ALJ's Decision

The ALJ determined that Smith was not disabled at step four of the sequential analysis. The ALJ found that Smith has the residual functional capacity for less than the full range of sedentary work, and could perform her past work as a telemarketer.

Smith contends that the ALJ erred by: (1) finding that Smith does not meet or equal Listing 1.04; (2) relying on the testimony of a medical expert that did not read every page of the record; (3) not following HALLEX I-2-5-36 in selecting a medical expert; (4) not finding Smith's hand complaints, fibromyalgia, and asthma not to be severe; (5) finding Smith's testimony not entirely credible; and (6) not properly crediting a treating physician opinion. Smith also contends that the appeals council erred in failing to find ALJ Abrams biased. The court addresses each claim of error in turn.

***Listing 1.04***. Listing 1.04 describes disabling disorders of the spine. In order to meet the requirements of Listing 1.04, a claimant must have:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by

>   severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>   or
>   C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[3]

Plaintiff does not explain how she meets the requirements of this listing. Smith argues only that the ALJ's decision is erroneous to the extent it is based on the medical expert's testimony that physical examinations of Smith do not show neurological involvement. According to Smith, there is evidence in her medical records of a positive straight-leg raising test as well as references to her radiculopathy, both of which indicate neurological involvement.

Dr. Wik addressed the positive straight-leg raising test in her testimony. She pointed out that the evidence relied upon by Smith appears in a September 12, 2003 notation that does not indicate the degree of limitation or location of the pain, and thus the notation is not specific enough to be informative.[4] In addition, September 2002 and March 2004 neurological exams and a November 2003 neurovascular exam were normal.[5]

Moreover, the ALJ did not base his decision that Smith's spine disorder does not meet Listing 1.04 solely on Dr. Wik's testimony regarding a lack of neurological involvement.

---

[3]     20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04.

[4]     Tr. at 620-21.

[5]     Tr. at 606, 610.

The ALJ wrote: "The claimant's diseased joints in her back do not meet the requirements of listing 1.04 for disorders of the spine because limitation of motion of the claimant's spine, or of motor or reflex loss, with muscle atrophy or muscle weakness."[sic][6] It is obvious, as Smith points out, that the explanatory clause concerning "limitation of motion" is incomplete. Equally obvious from the context is that the subordinate clause was intended to justify the conclusion in the base clause that the listing requirement was not met. Because Listing 1.04 requires such a limitation, the only reasonable inference is that the omitted words would have confirmed the absence of the limitation in Smith's case. In sum, the ALJ's finding that Smith's impairment does not meet Listing 1.04 is supported by the record.

***Dr. Wik's testimony.*** Smith's description of Wik's testimony regarding her failure to review the entire record is inaccurate. Wik testified that she thoroughly reviewed the record.[7] The testimony Smith cites, read in context, is not to the contrary. Wik's point was simply that she cannot read every page in the record and then form a medical opinion if the notations in the record are not specific enough for her to make an objective medical finding.[8] Smith's first attack on the reliability of Dr. Wik's testimony is unfounded.

---

[6]   Tr. at 22.

[7]   Tr. at 597, 619-23.

[8]   Tr. at 619.

Smith's second attack on Dr. Wik's testimony is based on an alleged violation of agency procedure for selecting medical experts, which is set out in HALLEX I-2-5-36.[9] HALLEX is an internal policy manual that does not have the force of law. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). Even so, where prejudice results from a violation of HALLEX, the result cannot stand. *Id.*

There is no evidence in the record that the ALJ violated HALLEX I-2-5-36 in this case. Counsel presents his subjective opinion that this ALJ relies on Dr. Wik almost exclusively because Wik almost never finds claimants disabled. But the record contains no evidence showing that the procedure followed by the ALJ in selecting Dr. Wik for this case violated Agency policy. Smith's argument is undercut by the fact that the same ALJ used a different medical expert, and reached the same result, in the prior November 2004 hearing. Nor did Smith object at the hearing to Dr. Wik's testifying in this case. Finally, because the court finds that ALJ's disability determination is supported by other evidence in the record, Smith has not shown prejudice from the testimony of Dr. Wik.

***Impairments not found to be severe.*** The ALJ did not err in failing to find Smith's fibromyalgia, hand complaints, and asthma to be severe. The ALJ applied the correct standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), in assessing the

---

[9] "HALLEX" is the Hearings, Appeals and Litigation Law Manual, a policy manual written to convey "guiding principles, procedural guidance and information to the Office of Hearings and Appeals staff." HALLEX Ch. I-1-001.

severity of Smith's alleged impairments.[10] "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.*

The first reference to a diagnosis of fibromyalgia appears in May 2006, long after the December 31, 2004 date last insured.[11] As to her hand complaints, the record supports the ALJ's conclusion that Smith had successful carpal tunnel syndrome surgery. Smith reported good mobility in her fingers post-surgery.[12] Although she testified at the hearing that she needed surgery on her left hand, there is no medical evidence to support that testimony. The record further supports the ALJ's conclusion regarding asthma. Smith points to no diagnosis of asthma in her medical records, and she was first prescribed an Albuterol inhaler in 2005, after the date last insured.

Smith points to nothing in the record indicating that these conditions, to the extent they are supported by medical evidence, had more than a minimal impact on her ability to work prior to December 31, 2004.

---

[10] *See* Tr. at 17-21.

[11] Tr. at 413, 424, 614. There is a reference to fibromyalgia in notes from a 2004 well woman exam, but there was no specific work up for it. Tr. at 338, 614. In addition, Smith testified at the hearing that "I don't really believe I have fibromyalgia." Tr. at 573.

[12] Tr. at 182.

*Plaintiff's credibilty.* Smith contends that the ALJ mischaracterized her testimony in order to discount her credibility. The ALJ stated that Smith's, and her husband's, testimony regarding the extent of her impairments was almost entirely about her current condition, not her condition prior to the date last insured. Smith adamantly denies that characterization of her testimony. While Smith and her husband did provide some testimony regarding her impairments prior to December 31, 2004, the ALJ's characterization of Smith's and her husband's testimony is supported by the record. In any event, this was not the only, or even primary, basis for the ALJ's decision. The ALJ explained in detail why Smith's subjective complaints were not consistent with the objective medical evidence. Thus, his credibility determination is not error. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).

*Treating physician*. The record contains treatment notes and two RFC assessments from Smith's treating physician, Joette Gracia-Trujillo, M.D. The ALJ concluded that Trujillo's September 12, 2003 and October 1, 2004 RFC assessments were not supported by the medical evidence.[13]

In the face of conflicting medical evidence, an ALJ is not obliged to accept the unsupported reports of a treating physician. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported

---

[13] Tr. at 23.

by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

Dr. Wik testified as to numerous specific ways in which Gracia-Trujillo's RFC assessment is not supported by objective medical evidence. For example, Gracia-Trujillo's October 1, 2004 assessment is based on multiple herniated discs. Yet the medical records show only degenerative disc disease with some disc bulges, not herniated discs.[14] Because objective medical evidence in the record conflicts with the treating physician's conclusory RFC assessments, the ALJ did not err in affording them little weight.

***ALJ Bias***. Smith contends that ALJ Abrams is biased against all Social Security disability claimants. In support, Smith cites statistics showing that while the average approval rate for ALJs other than Abrams was 52.99% in 2005, Judge Abrams's approval rate was 7.19%.

While troubling, the statistics Smith cites do not show that Abrams was biased against her in this case. The court must begin with a presumption that the ALJ is unbiased. *Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007). "It is only after a petitioner has demonstrated that the decisionmaker 'displayed deep-seated and unequivocal antagonism that would render fair judgment impossible' that the presumption is rebutted, the findings set aside, and the matter remanded for a new hearing." *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 556 (1994)). This court defers to the Commissioner for fact-finding regarding claims of general

---

[14] Tr. at 611.

bias. *Grant v. Shalala*, 989 F.2d 1332, 1345-46 (3d Cir. 1993) (Alito, J.) (district court lacks authority under 42 U.S.C. § 405(g) to make independent findings of fact concerning alleged bias).[15] In this case, the Commissioner has considered the bias allegations presented by Smith's counsel, and found them to be without merit.[16] That determination is entitled to substantial deference by this court.

Nothing in the administrative record suggests that ALJ Abrams harbored a particular bias against this claimant. Smith attributes Abrams's decisions to rely on the testimony of Dr. Wik and to discount the RFC assessment of her treating physician to his bias. However, the court has found those decisions supported by substantial evidence. The record does not indicate that Smith was denied a fair hearing. This court will not set aside the ALJ's decision based on allegations of generalized bias where the record reflects no particular bias against the claimant and adequately supports the decision.

As for the grim statistics, district courts are in no position to judge what threshold percentage of "favorable" decisions is necessary to acquit an ALJ of suspicion of intolerable bias against Social Security claimants. Neither the statute nor its implementing regulations provide such a benchmark. Given that reality, any number is just as arbitrary as the next. Who is to say that a ratio of 10% favorable rulings is less acceptable than 10% unfavorable?

---

[15] The record does not indicate that Smith objected to ALJ Abrams before either of her hearings pursuant to 20 C.F.R. § 404.940 or § 416.1440.

[16] Tr. 9, 410.

On what basis? Given the same docket of cases, it is unreasonable to expect that fair-minded ALJ's would achieve precisely the same batting average of favorable dispositions.

The substantial evidence standard of review presumes that a range of outcomes is permissible in most cases. Within that range of permissible outcomes, it is inevitable that an ALJ's personal proclivities come into play. No judge is an automaton. Some are more sympathetic toward claimants than others, but nothing in the law entitles a claimant to a friendly ear. The public might well question agency officials who continue to employ decision-makers apparently hostile to the agency's mission. But such policy and personnel issues are beyond the court's portfolio, so long as the determination in a given case is supported by substantial evidence and not infected by legal error or particularized bias. The ALJ's decision here passes that muster.

**Conclusion**

The Commissioner's motion for summary judgment is granted, the claimant's motion is denied, and the Commissioner's decision denying benefits will be affirmed.

Signed at Houston, Texas on September 9, 2008.

_Stephen Wm Smith_
Stephen Wm Smith
United States Magistrate Judge